THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY
OF ESSEX

v.

THE NEWARK CITY NATIONAL BANK and JOSEPH M.
SMITH.

1. The title to all property belonging to a county is by statute vested in its board of chosen freeholders.

2. The contract, arising by implication of law, from a deposit of money in a bank is, that the bank will, whenever required, pay out the money in such sums and to such persons as the depositor shall designate by his checks.

3. Even when it is known that the money deposited is held by the depositor as a trustee, the bank is bound to presume, in the absence of knowledge to the contrary, that a check drawn by the depositor against the money has been drawn by him in the proper discharge of his duty as trustee, and to pay the check accordingly.

4. When the jurisdiction of this court is disputed on the ground that a remedy at law exists to justify the court in declining jurisdiction, it must appear that the remedy at law is neither doubtful nor obscure; also, that it will correct the whole mischief and secure to the person asking relief his whole right, in a perfect manner.

5. A *mandamus* never issues to enforce an equitable right. Two things must concur to authorize its issue—a specific legal right and the absence of any other effectual legal remedy.

On demurrer.

*Mr. Frederic W. Stevens*, for the complainant.

*Mr. John W. Taylor*, for the demurrant.

VAN FLEET, V. C.

The defendants to this suit are Joseph M. Smith and the Newark City National Bank. Smith has filed a demurrer which attributes two faults to the complainant's bill—*first*, that it contains no equity; and, *second*, that the complainant has an adequate and complete remedy at law. The bill makes this case:

That Smith was elected county collector of the county of Essex in May, 1885, and was re-elected annually thereafter until May, 1890, when another person was elected to that office, who duly qualified ; that Smith, while holding the office of county collector, deposited a part of the moneys which came to his hands in virtue of his office in the Newark City National Bank, to the credit of an account which he opened in that bank in the name of "Joseph M. Smith, Collector," and that there stood to the credit of that account on the books of the bank, when he ceased to be county collector, over $18,000 ; that this money was and is the property of the complainant, and had been deposited by Smith in his official character, in order that it might be drawn out and expended for public purposes under the direction of the complainant; that the complainant has requested Smith, since he ceased to be county collector, to draw a check by which the money might be transferred from his credit to that of the complainant, and that he not only refused to do so, but to do any other act by which the money might be applied by the complainant to the uses for which it was raised ; and that the bank has refused to honor a check drawn against the money so deposited, by the collector now in office, in obedience to a resolution adopted by the complainant, on the ground, as it states, that it cannot safely pay a check drawn by any other person than Smith.  The complainant asks for a decree adjudging that the money in bank standing to the credit of "Joseph M. Smith, Collector," is its money, and directing the bank forthwith to pay the money to it.

Taking these averments to be true, as we must against the demurrant, it seems to me that a case of equity cognizance, perfect in every essential respect, is presented ; indeed, so perfect does the case appear to me to be that I am compelled to regard the attack upon it rather as an exhibition of courage than sagacity.  These facts stand confessed : That the bank owes somebody over $18,000 ; that this debt was contracted by the bank in receiving on deposit money belonging to the county of Essex from that public officer who usually receives and disburses the county funds, and that since this debt was contracted the officer, to whose credit the money was placed, has become *functus*

Freeholders of Essex *v.* Newark National Bank.

*·officio.* That the legal title to the money deposited was originally in the complainant there can be no doubt. The statute incorporating the boards of chosen freeholders of the several counties of this state vests in each board the title to all property held for public use in the county which the board represents, and it also gives power to each board to raise such sums of money for public use as the board shall deem adequate or proper, and then adds: "All which moneys so raised shall be applied, paid and expended under the direction and management of said corporation." *Rev. pp. 127 § 2, 128 § 4.* By plain words this statute vests the legal title to all property belonging to a county in its board of chosen freeholders. It has been decided that this was one of the manifest purposes of the statute. *Freeholders of Monmouth County* v. *Red Bank &c. Turnpike Co., 3 C. E. Gr. 91.*

But this situation of affairs has, in respect to the legal title to the money in question here, been changed, at least so far as the bank is concerned. The bank, by crediting the money to Joseph M. Smith, collector, became, by law, Smith's debtor, and he became its creditor. The contract, arising by implication of law, from a deposit of money in a bank is, that the bank will, whenever required, pay out the money in such sums and to such persons as the depositor shall designate by his checks. The deposit is made to subserve the convenience of the depositor, with the understanding that he shall have the right to draw checks against it at his pleasure. And even when it is known that the money deposited is held by the depositor as a trustee, the bank is bound to presume, in the absence of knowledge to the contrary, that a check drawn against the money by the depositor has been drawn by him in the proper discharge of his duty as trustee, and to pay the check accordingly. *National Bank* v. *Insurance Co., 104 U. S. 54, 63.* So far as the pleadings now show, no legal relation, arising out of a contract, either express or implied, was established between the complainant and the bank when the money in question was deposited; nor is anything alleged which shows that since then the bank has become subject to a legal duty to the complainant, which the complainant may enforce by any of the ordinary or extraordinary reme-

dies known to the law. As the record now stands, there is nothing in it whatever which shows that the complainant has a remedy at law against the bank for the money or credit in dispute. It certainly has not a plain, adequate and complete remedy at law. And that, as I understand the rule on this subject, must be the character of the remedy at law which is required, in a case of this kind, to justify this court in declining jurisdiction. If the remedy at law is doubtful or obscure, or if it falls short of correcting the whole mischief, or of securing to the party asking relief his whole right, in a perfect manner, this court must retain jurisdiction in order that full and complete justice may be done. *1 Story Eq. Jur.* § *33*.

On the argument, it was not pretended that the complainant could maintain an action in *assumpsit* against the bank for the recovery of the money which it owes, but the single ground put forward in support of the demurrer was, that the only remedy to which the complainant can have recourse against the bank, assuming the facts stated in its bill to be true, is an application for a *mandamus*. The argument urged was, that the remedy which that writ would furnish, in such a case as this, was so plain, so adequate and so effectual that the complainant should be thrust out of this court, and thus be compelled to seek relief by that process. But this view stands, obviously, in direct conflict with the very foundation on which the law regulating the use of the writ of *mandamus* rests. That writ never issues except to enforce a legal right or duty. It is a process known only to the common law, and cannot be used to enforce purely equitable rights. Mr. Justice Depue, speaking for the supreme court, in *State* v. *Paterson, Newark and New York R. R. Co., 14. Vr. 505, 510*, said: "Two things must concur to authorize the issuing of a *mandamus*—a specific legal right and the absence of an effectual legal remedy." The remedy by *mandamus* is an extraordinary one, and the principle which regulates its use is this: That whenever a legal right exists, the person entitled to such right should have a legal remedy for its enforcement, and when the ordinary remedies of the law fail him, he may have recourse to this writ.

Freeholders of Essex v. Newark National Bank.

Whether or not the complainant could successfully prosecute an application for a *mandamus* against Smith, to compel him to make a transfer of the money standing to his credit on the books of the bank, it is wholly unnecessary to inquire, for, as the case now stands, the bank is the principal debtor; it received the money, and has had the use of it, and still has it, and is, therefore, the party who is primarily liable, and who ought, in justice, to be compelled to pay it.  The duty of the bank to pay is higher than that of Smith; the bank has had the benefit of the money and Smith has not.   The features of the case which make it the proper subject of equity jurisdiction require no discussion. It is sufficient to say that the admitted facts are, that a large sum of money belonging to the complainant was deposited in the defendant bank, in the name of another person, in such manner that the bank became liable at law to such other person for the balance standing to the credit of the account, and that now, although the person making the deposit has lost all right to exercise any control over the money, he nevertheless unjustly refuses to do any act whereby the complainant may regain control of the money, and that, in addition, the bank refuses to recognize the right of the complainant to the money, as against the person who deposited it, until its right has been judicially established.   My judgment is, that in such a case, no court but a court of equity can give full, speedy and complete relief to the injured party.   No other tribunal can take cognizance of the complainant's right to the subject of the suit, nor determine the complainant's right to it, as against both defendants, in a single suit.

The demurrer must be overruled, with costs